UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANCY ARCE LAPORTE, Individually, as
Administrator of the Estate of ADAM LAPORTE,
Deceased, and as Mother and Natural Guardian of
A.L., an infant

                               Plaintiff,

       -v-

UNITED STATES OF AMERICA, UNITED
STATES DEPARTMENT OF JUSTICE, DRUG
ENFORCEMENT ADMINISTRATION, and DRUG
ENFORCEMENT ADMINISTRATION HUMAN
RESOURCES DIVISION,

                            Defendants.

Case No. 09-CV-7247 (KMK)

OPINION AND ORDER

Appearances:

Joseph P. Lanni, Esq.
Law Office of Joseph P. Lanni, P.C.
Larchmont, New York
*Counsel for Plaintiff*

Amy Ann Barcelo, Esq.
United States Attorney's Office
New York, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Nancy Arce Laporte ("Plaintiff"), in her individual capacity, as administrator of the

estate of her deceased husband, Adam Laporte ("the decedent"), and as mother and natural

guardian of A.L., an infant, brings this action against the United States of America, the United

States Department of Justice, the Drug Enforcement Administration, and the Drug Enforcement

Administration Human Resources Division (collectively, "Defendants").  Plaintiff alleges that

Defendants failed in their duty to inform the decedent of his right to convert his Federal

Employees Group Life Insurance ("FEGLI") policy to an individual policy following his separation from service, in violation of the Federal Employees Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 *et seq*.  Plaintiff seeks equitable relief, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and 28 U.S.C. § 1361, compelling Defendants to notify her of the decedent's conversion right and to reinstate and convert the decedent's policy, and, ultimately, she seeks payment of the benefits she claims were due on the period from the decedent's separation from service until his death.  Defendants move to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff's claim is barred by sovereign immunity.  For the reasons stated herein, Defendants' motion is granted.

## I. Background

### A. Facts

The Court assumes the following facts, as alleged in the Amended Complaint, to be true for purposes of the instant motion.  The decedent, Adam Laporte, was employed by Defendant Drug Enforcement Administration ("the DEA"), a federal law enforcement agency under Defendant United States Department of Justice ("DOJ"), as an intelligence research specialist from 1998 to 2006.  (Am. Compl. ¶¶ 6-7, 12-13.)  While employed at the DEA, the decedent maintained a Basic life insurance plan and an Option A life insurance plan under the FEGLI program.  (*Id.* ¶ 36.)  Plaintiff, the decedent's wife, and the decedent's infant child, were the named beneficiaries under the decedent's life insurance coverage.  (*Id.* ¶ 37.)

On February 16, 2006, John P. Gilbride, a special agent-in-charge at the DEA, served a Removal Letter on the decedent.  (*Id.* ¶¶ 21, 38.)  The purpose of the letter was to commence a disciplinary action against the decedent for alleged misconduct, and to place the decedent on

administrative leave.  (*Id.* ¶ 38.)  On February 27, 2006, the decedent, through his attorney,

Thomas G. Roth, Esq. ("Roth"), sent a letter to a "deciding official" at the DEA, providing

notice of the decedent's legal representation in the pending disciplinary action, and requesting a

60-day extension of time to serve a written response to the Removal Letter.  (*Id.* ¶ 39.)  On

March 14, 2006, Roth sent a letter to Stephen G. Griswold ("Griswold"), the DEA "deciding

official," objecting to the decedent's placement on administrative leave, and suggesting that the

DEA conduct a "psychological fitness for duty evaluation" for the decedent due to his "bizarre

behavior."  (*Id.* ¶ 40.)  On March 21, 2006, Roth sent Griswold a letter explaining that the

decedent's alleged misconduct was, in part, the result of "an emotional and psychological

problem" from which he was suffering, and on April 20, 2006, Roth sent an 18-page letter brief

to Griswold responding directly to the misconduct charges.  (*Id.* ¶¶ 41, 42.)  On April 25, 2006,

the decedent was placed on non-pay administrative leave after exhausting his paid

compensatory, annual, and sick leave time awaiting the outcome of the disciplinary proceedings

against him.  (*Id.* ¶ 43.)  Griswold sent Roth a letter on May 4, 2006, advising that the charges of

misconduct against the decedent had been sustained, and that the decedent's employment with

the DEA was to be terminated May 5, 2006.  (*Id.* ¶ 44.)  The letter also advised that the

decedent's termination could be held in abeyance pending processing of a disability retirement

application on the decedent's behalf, and instructed Roth to contact the DEA Human Resources

Division to obtain assistance in the application process.  (*Id.*)

On May 8, 2006, Roth sent a memorandum to Griswold requesting postponement of the

decedent's termination until June 15, 2006, and Griswold sent a return letter on May 11, 2006

granting the postponement.  (*Id.* ¶¶ 45, 46.)  In May or June 2006, the decedent was diagnosed

with bipolar disorder with psychotic features, and began receiving psychiatric care, including a

3

regimen of prescription medication.  (*Id.* ¶ 47.)  On June 2, 2006, Roth sent a memorandum to

Griswold requesting further postponement of the decedent's termination until June 22, 2006, to

allow for the submission of pending psychiatric and psychological evaluation reports on the

decedent's medical condition in connection with the disability retirement application, and that

postponement was granted by Griswold on June 11, 2006.  (*Id.* ¶¶ 48, 49.)  On June 22, 2006,

Roth sent a memorandum to Griswold requesting another postponement of the decedent's

termination until June 29, 2006, which Griswold granted.  (*Id.* ¶¶ 50, 51.)  On June 30, 2006,

Roth sent Griswold the first of two reports on the decedent's medical condition, which evaluated

the decedent's psychological state.  (*Id.* ¶ 52.)  On July 10, 2006, Griswold sent a letter to Roth

granting postponement of the decedent's termination until July 14, 2006, pending submission of

the second report on the decedent's condition, which was a psychiatric evaluation.  (*Id.* ¶ 53.)

Roth requested, and Griswold granted, two more postponements of the decedent's termination,

until August 18, 2006, pending submission of the second report.  (*Id.* ¶¶ 54-56.)  The second

report was submitted to Griswold on August 7, 2006.  (*Id.* ¶ 57.)

On or about August 17-18, 2006, the decedent's employment with the DEA was

terminated, allegedly with no notice of such termination being provided by the DEA to Roth or

the decedent.  (*Id.* ¶ 58.)  On October 10, 2006, after the decedent discovered that his health

insurance coverage had been terminated, Roth sent a letter to Griswold inquiring about the

decedent's employment status, and about the status of the decedent's disability retirement

application.  (*Id.* ¶ 59.)  On October 17, 2006, Griswold sent Roth a letter advising that the

decedent's employment had been terminated on August 18, 2006, and that notice of such

termination had been provided in a letter sent by Griswold to Roth and the decedent in "mid-

August 2006."  (*Id.* ¶ 60.)  The following day, Roth sent a letter to Griswold requesting a copy of

4

this letter, and the day after that, Griswold sent a letter to Roth acknowledging that no written notice of the decedent's termination had been sent to Roth or the decedent.  (*Id.* ¶¶ 61-62.)  On November 9, 2006, the decedent died as a result of a fall from the roof of his home.  (*Id.* ¶ 65.)

### B. Procedural History

Plaintiff filed the initial Complaint on August 17, 2009.  (Dkt. No. 1.)  On February 18, 2010, Plaintiff filed the Amended Complaint.  (Dkt. No. 7.)  On July 16, 2010, Defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Dkt. No. 13.)  The Court held oral argument on May 27, 2011.

## II. Discussion

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if the court "lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted)), *aff'd*, 130 S. Ct. 2869 (2010).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In deciding a Rule 12(b)(1) motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,'" *Morrison*, 547 F.3d at 170 (quoting *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)) (citation and internal quotation marks omitted), but "'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it,'" *id*. (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).  In deciding the motion, the court "may consider affidavits and other materials beyond the pleadings

to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

### B. Analysis

Plaintiff claims that the DEA, along with the other Defendants, violated FEGLIA and its accompanying regulations by failing to notify the decedent of the loss of his group life insurance coverage upon separation, and his right to convert his FEGLI policy to an individual policy (a right allegedly provided under 5 C.F.R. § 870.603(a)(1)), as required by 5 C.F.R. § 870.603(a)(2). (*Id.* ¶¶ 66-71.) Plaintiff claims that Defendants' failure to notify the decedent of this right deprived the decedent of the opportunity to make a request for conversion of his life insurance coverage, which in turn deprived his beneficiaries of the monetary benefits of a converted individual policy after the decedent's death. (*Id.* ¶¶ 73-74.) Plaintiff seeks an order from the Court, pursuant to the APA and 28 U.S.C. § 1361, compelling Defendants to provide notice to Plaintiff, as the decedent's estate administrator, of the decedent's conversion right, to effectuate reinstatement and conversion of the decedent's FEGLI policy, and to pay Plaintiff the benefits under the policy from the time the decedent was separated from service, on August 18, 2006, until his death on November 9, 2006. (*Id.* ¶¶ 75-76.)[1] Defendants counter that the Court

---

[1] This request for equitable relief is Plaintiff's sole cause of action for purposes of this motion to dismiss. The Amended Complaint contained a second cause of action alleging violations of §§ 8706(b)(2) and 8706(e) of FEGLIA, but Plaintiff subsequently abandoned this claim. (*See* Letter from Joseph Lanni, Esq. to the Court (May 3, 2010) (Dkt. No. 11); Mem. of Law in Supp. of Gov't's Mot. to Dismiss Am. Compl. for Lack of Subject Matter Jurisdiction ("Defs.' Mem.") 5 n.2.)

lacks subject matter jurisdiction over Plaintiff's claims, because the government's waiver of sovereign immunity for FEGLIA claims only applies where the government has breached a duty created under the statute, and the government has no duty to provide notice of a conversion right under the statute.

### 1. Waiver of Sovereign Immunity Under FEGLIA

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). To find that the government has waived sovereign immunity, such waiver must be "'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992)). Further, "a [purported] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," *Lane v. Pena*, 518 U.S. 187, 192 (1996), and "not 'enlarge[d] . . . beyond what the language requires," *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983) (quoting *E. Transp. Co. v. United States*, 272 U.S. 675, 686 (1927)). *See also United States v. Williams*, 514 U.S. 527, 531 (1995) (noting that courts "may not enlarge the waiver beyond the purview of the statutory language"). The doctrine "is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Finally, the principle of sovereign immunity applies not just to the United States, but also to federal agencies and federal employees acting in their official capacity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

Congress enacted FEGLIA "to facilitate the obtaining of insurance for Government employees on a primarily commercial basis." *Kimble v. United States*, 345 F.2d 951, 952 (D.C.

7

Cir. 1965).  "Under FEGLIA, the Government is not the insurer; [rather,] it is the policyholder under a policy issued by a commercial company."  *Argent v. Office of Pers. Mgmt.*, No. 96-CV-2516, 1997 WL 473975, at *2 (S.D.N.Y. Aug. 20, 1997) (alterations and internal quotation marks omitted).  FEGLIA contains an explicit waiver of sovereign immunity, which provides: "The district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or a claim against the United States founded on this chapter."  5 U.S.C. § 8715.  This waiver, courts have found, is limited to actions that involve a breach of the government's duties under FEGLIA.  *See Argent*, 1997 WL 473975, at *2; *see also Lewis v. Merit Sys. Prot. Bd.*, 301 F.3d 1352, 1353 (Fed. Cir. 2002) (noting that sovereign immunity waiver under FEGLIA is limited to claims involving some right created by the Act, and a breach by the government of some corresponding duty); *Barnes v. United States*, 307 F.2d 655, 657-58 (D.C. Cir. 1962) ("The United States has consented to be sued, we conclude, to the extent that any such civil action or claim can be shown to involve some right created by [FEGLIA] and a breach by the Government of some duty with respect thereto."); *Dixon v. United States Post Office*, No. 09-CV-1694, 2009 WL 51255825, at *2 (N.D. Cal. Dec. 21, 2009) (noting that "the waiver contained in 5 U.S.C. § 8715 . . . pertains only to legal duties establish[ed] by [FEGLIA]"); *Jacobs v. United States*, 794 F. Supp. 509, 511 (S.D.N.Y. 1992) (same).  Any other actions unrelated to the government's FEGLIA duties — for example, a breach of the policy itself — must be brought against the insurance company.  *See Walker v. United States*, 161 Ct. Cl. 792, 1963 WL 8572, at *5 (Ct. Cl. 1963) (noting that claims alleging breach of a group policy must be brought against insurance company and not the government).

The question here is whether, under FEGLIA, the United States had a duty to provide notice to the decedent that he would lose coverage upon separation from the DEA and of his

right to conversion.  Defendants cite several cases which, they argue, make clear that the United

States had no such duty.  *See Argent*, 1997 WL 473975, at *2 (noting that "the Government's

duties under FEGLIA are limited to negotiating and procuring group life insurance policies for

its employees"); *Jacobs*, 794 F. Supp. at 511 (noting the same, and that the United States is only

liable if it fails to cause the issuance of an employee's insurance contract in the proper amount);

*Railsback v. United States*, 181 F. Supp. 765, 766 (D. Neb. 1960) (same); *Grove v. United

States*, 170 F. Supp. 176, 177 (E.D. Va. 1959) (same).  The limited scope of the obligations of

the United States under FEGLIA, Defendants argue, does not include any duty to notify

employees of their conversion rights.  Defendants also emphasize that no language in the statute

(as opposed to the regulations) gives rise to such a duty.  *See Frerichs v. United States*, No. 05-

CV-5900, 2006 WL 200812, at *2 n.3 (N.D. Ill. Jan. 23, 2006) (noting that there was "no clear

indication from Congress in [the statutory text of FEGLIA] that Congress wished to waive the

United States' sovereign immunity and create" the purported duty at issue); *Argent*, 1997 WL

473975, at *2 (noting that the government has not waived sovereign immunity unless it has

breached a "*statutory* duty") (emphasis added).  Finally, Defendants cite *Robinson v. United

States*, 8 Cl. Ct. 343, 345 (Cl. Ct. 1985), *aff'd*, 806 F.2d 249 (Fed. Cir. 1986), which held that

regardless of whether the United States owes any duty under FEGLIA, the United States cannot

be held liable for money damages for a breach of that duty.

      Plaintiff, on the other hand, contends that Defendants place an inordinate amount of

emphasis on the statutory text.  Instead, Plaintiff points to a number of the regulations,

promulgated by the Office of Personnel Management ("OPM"), pursuant to 5 U.S.C. § 8716(a),

in order to "carry out [FEGLIA's] purposes," which she asserts make clear that the United States

had a duty to notify the decedent of the loss of his group coverage upon separation and his right

to conversion.  In particular, 5 C.F.R. § 870.603(a)(1) provides employees with the right to convert their group coverage, upon their separation from service, to an individual policy, and 5 C.F.R. § 870.603(a)(2) requires that "the employing agency must notify the employee/assignee(s) of the loss of coverage and the right to convert to an individual policy either before or immediately after the event causing the loss of coverage."  Plaintiff also cites *Metropolitan Life Insurance Co. v. Atkins*, 225 F.3d 510, 513-14 (5th Cir. 2000), where the court found that the United States had a duty under FEGLIA to maintain an insured's policy records.[2]

The Court accepts, for purposes of this motion, Plaintiff's assertion that the government's duties under FEGLIA are not necessarily required to be laid out in the statutory text — rather, the accompanying regulations may potentially create such duties.  At least two of the opinions cited by Defendants implicitly suggest as much.  *See Argent*, 1997 WL 473975, at *4 (dismissing claim where "[n]either FEGLIA nor the related administrative regulations" imposed any duties

---

[2] Specifically, the *Atkins* plaintiffs claimed that a federal personnel clerk failed to properly maintain the decedent's policy records, which in turn deprived the plaintiffs of the right to the proceeds of the policy as the named beneficiaries.  The district court, citing both the statute and the regulations, found that the insured carried the burden of providing the employing office with properly completed forms, and that the employing office had no duty beyond receiving these forms.  *See Atkins*, 225 F.3d at 513.  Because no duty under FEGLIA was implicated, the district court held that the United States had not waived sovereign immunity for the plaintiffs' claims.  *See id.*  In reversing, the Fifth Circuit found that it was possible, given the evidentiary record, that the decedent had in fact fulfilled his duty to submit a properly completed beneficiary form, and that the employing office had lost or misfiled it.  *See id.* at 513-14.  While agreeing with the district court "that the personnel clerk had no duty to ensure that the forms were properly completed," the court extrapolated from the duty to receive forms and held that "the United States, through the personnel clerk, has a duty to maintain designation of beneficiary forms turned over to its care."  *Id.* at 514.

At oral argument, Plaintiff's counsel cited *Devlin v. United States*, 352 F.3d 525 (2d Cir. 2003), which he claimed supported the *Atkins* court's analysis of duties created under FEGLIA. However, in *Devlin*, the Second Circuit favorably discussed only that portion of *Atkins* which dealt with the misrepresentation exception under the Federal Tort Claims Act ("FTCA").  *See Devlin*, 352 F.3d at 543.  The *Devlin* court said nothing at all about the Fifth Circuit's approach in *Atkins* to determining whether a duty exists under FEGLIA.

10

on the United States); *Robinson*, 8 Cl. Ct. at 345 (reviewing the statute *and* the regulations to determine whether an actionable governmental duty existed); *cf. Reinisch v. Metro. Life Ins. Co.*, 469 N.Y.S.2d 767, 774 (App. Div. 1983) (noting that the FEGLIA regulations "are substantive rules of law, having no less pre-emptive effect than a Federal statute," and that they should "be applied to all questions of coverage and conversion").[3]  However, the Court also notes that it is "atypical" of courts "to impose additional duties on the Government" in the waiver of sovereign immunity context.  *Argent*, 1997 WL 473975, at *3.  Given the rigorous standard that must be applied in determining whether sovereign immunity has been waived for a given claim, the Court must apply an exacting analysis to determine if any provision in FEGLIA, including regulations promulgated thereunder, creates an actionable duty.[4]  Indeed, in cases where the courts have found no waiver of sovereign immunity, the alleged duties at issue could not be discerned from any text, whether in the statute or the regulations.  *See Barnes*, 307 F.2d 655 (finding no duty to convert group coverage to individual policy for employee, where employee had been notified of his right of conversion but took no action thereafter to effect conversion);

---

[3] The courts also have looked to regulations promulgated under statutes that contain sovereign immunity waivers identical to that found in FEGLIA.  For example, Congress amended the Veterans' Insurance Act in 1974 to extend coverage under Servicemen's Group Life Insurance ("SGLI") to certain qualifying veterans.  *See* Veterans' Insurance Act of 1974, Pub. L. No. 93-289, 88 Stat. 165.  Section 1975 of that Act provides: "The district courts of the United States shall have original jurisdiction of any civil action or claim against the United States founded upon this subchapter."  38 U.S.C. § 1975.  In determining whether an action is covered by this waiver, as they do with regard to the same provision in FEGLIA, the courts have looked to determine if the plaintiff claims a breach of duty under the statute and/or the accompanying regulations.  *See, e.g., Denton v. United States*, 638 F.2d 1218, 1220 (9th Cir. 1981) ("Neither the Veterans' Insurance Act of 1974 nor the regulations promulgated under it sets forth an explicit duty to notify Retired Reservists of their SGLI eligibility.").

[4] In *Atkins*, on the other hand, the court determined that the government had a duty to maintain the policyholder's records, even in the absence of any applicable statutory or regulatory provision.

11

*Argent*, 1997 WL 473975 (finding no duty to determine the authenticity of designation forms).[5]

Here, Plaintiff has pointed to specific regulatory text stating that the employing agency must provide notice of the right to conversion.  *See* 5 C.F.R. §§ 870.603(a)(1)-(2).  Nevertheless, the existence of another provision in the regulations suggests that this duty to provide notice is not the type of duty that, when breached, would allow for an award of monetary damages against the government.  In particular, 5 C.F.R. § 870.603(a)(5) provides that when an agency fails to notify an employee of the impending loss of his coverage and of the right to convert the employee's coverage to an individual policy, that employee may still acquire an individual policy by making a written request to OFEGLI, the office in charge of administering the FEGLI program, within six months of becoming eligible to convert the policy.  Therefore, FEGLIA and the accompanying regulations specifically contemplate circumstances where notice is not given by an agency to its employees of their conversion right, and provide a procedural mechanism through which those employees may still later obtain conversion to an individual policy.[6]

---

[5] Plaintiff asserts that *Barnes* "must be read as recognizing that the United States has waived sovereign immunity specifically for the particular claims at issue in this case; i.e., claims alleging that there was a failure to provide the required notice of the right to FEGLI conversion . . . ."  (Pl.'s Mem. 11.)  In actuality, however, the *Barnes* court only noted that notice of the right to conversion had been provided by the government, and that the government had not "failed in the performance of any duty arising under [FEGLIA]."  *Barnes*, 307 F.2d at 659.  The court gave no opinion as to whether the United States had waived sovereign immunity for claims involving failure to provide such notice.  Indeed, then-Judge Burger argued in his concurring opinion that the suit should have been dismissed on jurisdictional grounds, because "the United States ha[d] not consented to suit for the proceeds of insurance policies under [FEGLIA]."  *Id.* (Burger, J., concurring).

[6] The regulation states: "When an agency fails to provide the notification required in paragraph (a)(2) of this section . . . the employee may make a belated request by writing to OFEGLI.  The employee/assignee must make the request within six months after becoming eligible to convert the insurance.  The employee/assignee must show that he or she was not notified of the loss of coverage and the right to convert and was not otherwise aware of it or that he or she was unable to convert to an individual policy for reasons that were beyond his or her control.  OFEGLI will determine if the employee/assignee is eligible to convert.  If the request is

12

Accordingly, Plaintiff's assertion that FEGLIA cannot function without a notice requirement, and that "conversion cannot be effectuated where there has been a failure to give notice of the right to conversion" (Pl.'s Mem. 15), is contradicted by the very regulation upon which Plaintiff relies.  Indeed, the Amended Complaint alleges that Defendants' failure to provide the decedent with notice of his conversion right "deprived [the decedent] of the right to conversion" and the "right to make a belated request for conversion of FEGLI coverage," (Am. Compl. ¶ 73).  But, under the regulation, even where no notice is provided by the agency, an employee still has the right, and the ability, to belatedly convert his group coverage to an individual policy.  Plaintiff, therefore, has failed to establish a clear causal link between the government's breach of the alleged duty to notify and the claimed harm.

The waiver of sovereign immunity under FEGLIA, as with any act of Congress, must be "strictly construed, in terms of its scope, in favor of the sovereign," and the waiver "must extend unambiguously to . . . monetary claims."  *Lane*, 518 U.S. at 192, 193; *see also Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."); *Adeleke*, 355 F.3d at 150 ("[W]aivers of sovereign immunity must be 'unequivocally expressed' in statutory text, and cannot simply be implied." (quoting *Nordic Vill., Inc.*, 503 U.S. at 33)).  The availability of monetary damages under FEGLIA where an agency fails to notify an employee of his conversion right is far from unambiguous.  The fact that there is another provision within the applicable regulation that lays out a set of procedures to be followed in the event of an agency's failure to notify militates against a finding that the United States has

---

approved, the employee must convert within 31 calendar days of that determination."  5 C.F.R. § 870.603(a)(5).

consented to be sued in such situations.  Indeed, by the express language of § 870.603(a)(5), an employee who is not given notice of his right to conversion, and who waits more than six months after becoming eligible to convert before making a written request to OFEGLI, is without recourse to obtain an individual policy.[7]  The decedent here cannot stand in a better position than one who was not given notice of the conversion right, and who did not make an application within six months of his separation from service.  Such an individual would not have the right of conversion in such a circumstance because of the limitations contained in the regulations.  The same logic applies to the decedent, who, under the regulations, still had the right and the ability, even without notice, to convert his group coverage to an individual policy.

The Court recognizes that, tragically, the decedent's opportunity to convert his policy ended with his untimely death on November 9, 2006.  Although the Court sympathizes with Plaintiff's predicament, the government's failure to notify the decedent of his conversion right does not constitute a breach of a legal duty implicating FEGLIA's waiver of sovereign immunity, because an alternative mechanism was in place to address such situations.  Put another way, it cannot be said that a waiver of sovereign immunity has been "unequivocally expressed" by the United States in this context.  *Nordic Vill., Inc.*, 503 U.S. at 33; *see also Lane*, 518 U.S. at 192-93 (finding that Rehabilitative Act's waiver of sovereign immunity did not apply to plaintiff's claim because there was no unequivocal expression that the waiver was meant to apply to the type of claim at issue); *Nordic Vill., Inc.*, 503 U.S. at 33-35 (declining to find a waiver of sovereign immunity for monetary damages under the Bankruptcy Code where

---

[7] *See also* United States Office of Personnel Management, Federal Employees' Group Life Insurance (FEGLI) Program Handbook 119 (2008), *available at* http://www.opm.gov/insure/life/reference/handbook/feglihandbook.pdf ("If six months or more have passed since the date you first became eligible to convert, OFEGLI cannot accept a request for conversion.").

the relevant provision was ambiguous as to whether such relief was permitted, and noting that any governmental consent to be sued must not be "enlarged beyond what the [statutory] language requires" (quoting *Ruckelshaus*, 463 U.S. at 685 (original alterations omitted))).

The Second Circuit's recent decision in *Abrahams v. MTA Long Island Bus*, 644 F.3d 110 (2d Cir. 2011), further undercuts Plaintiff's theory of sovereign immunity waiver based on duties created by regulations under FEGLIA.  In *Abrahams*, the plaintiffs, disabled residents of Nassau County, sued both Nassau County and the operator of paratransit services, alleging violations of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), after paratransit services beyond those required by the ADA were reduced.  One of the issues before the *Abrahams* court was whether a private right of action existed to enforce a regulation, 49 C.F.R. § 37.137(c), that was promulgated by the Secretary of Transportation pursuant to authority vested in the statute at 42 U.S.C. § 12143 ("§ 12143").  *Abrahams*, 644 F.3d at 115-17.  In making this determination, the court first found that a private right of action was available under § 12143. *Id.* at 118-19.  Then, citing *Alexander v. Sandoval*, 532 U.S. 275 (2001), the court found that the regulation, 49 C.F.R. § 37.137(c), did not merely *apply* the mandate of § 12143, but rather *broadened* the requirements of the statute, creating obligations that were not contained in the statutory language.  *Id.* at 119; *see also Sandoval*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").  Hence, the court held that the regulation could not be enforced in a private right of action.  *Abrahams*, 644 F.3d at 119-20.

The parallels between the facts in *Abrahams* and the instant case are clear.  Waivers of sovereign immunity, as noted, must be "'unequivocally expressed' in statutory text, and cannot simply be implied."  *Adeleke*, 355 F.3d at 155 (quoting *Nordic Vill., Inc.*, 503 U.S. at 33).

Similarly, "'private rights of action to enforce federal law must be created by Congress' and the statute in question must evidence congressional intent to create a private right of action." *Abrahams*, 644 F.3d at 117 (quoting *Sandoval*, 532 U.S. at 286).  For a regulation to be enforceable through a private right of action — assuming that a private right of action exists to enforce the underlying statute — the regulation may apply, but must not expand, the rights created by Congress in enacting the statute.  *See Abrahams*, 644 F.3d at 118.  Similarly — assuming that Congress has waived sovereign immunity for claims alleging breaches of duties created by a statute (as is true of FEGLIA, *see Lewis*, 301 F.3d at 1353) — it seems reasonable to conclude that Congress has not waived sovereign immunity for a claim alleging a breach of a duty created by a regulation, where that duty goes beyond the scope of any duties created by the statute under which that regulation was promulgated.  At oral argument, the Parties agreed that the duty at issue here — to notify an employee of the loss of his group life insurance coverage upon separation and of his right to convert his group coverage to an individual policy — cannot be found anywhere in the statutory text of FEGLIA.  Therefore, the duty to notify created by 5 C.F.R. § 870.603(a)(2) goes beyond any duties contemplated by FEGLIA.  In other words, applying the logic of *Abrahams*, the regulation expands, rather than applies, the statute.  Accordingly, the Court finds that Congress has not waived sovereign immunity for actions involving breaches of this duty to notify.  The Court, therefore, does not have subject matter jurisdiction over this claim.[8]

---

[8] Defendants also compare FEGLIA to the Tucker Act, noting that "[t]he scope of FEGLIA's jurisdictional grant . . . is more limited than the jurisdictional grant contained in the Tucker Act."  (Letter from Amy A. Barcelo, Esq., to the Court (May 20, 2011).)  While the Tucker Act allows claims against the United States that are "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department," 28 U.S.C. § 1491, FEGLIA only allows claims against the United States that are "founded on this chapter," 5 U.S.C. § 8715.  Although clearly not entirely dispositive, the Court agrees that the limited scope

2. The APA and Mandamus Actions

In her opposition to Defendants' motion, Plaintiff also attempts to frame her claim as one for equitable relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and 28 U.S.C. § 1361, which gives district courts original jurisdiction over mandamus actions against federal officers and employees. Specifically, Plaintiff asserts that she is seeking to compel Defendants to comply with FEGLIA's notice provisions, retroactively reinstate the decedent's insurance coverage, and pay Plaintiff the benefits that would have been due on the period from decedent's separation of service until his death. (Pl.'s Mem. 8.) Defendants counter that Plaintiff cannot invoke these federal statutes to compel these actions, because the government has no duty to perform them. The Court agrees.

Turning first to the APA claim, the Court notes that the APA does not, by itself, confer jurisdiction to review decisions of administrative agencies. *See Clark v. Commodity Futures Trading Comm'n*, 170 F.3d 110, 113 n.1 (2d Cir. 1999). Rather, the district court may have subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, where a plaintiff alleges that an agency has violated the APA, and the claim is not "patently without merit." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004) (internal quotation marks omitted).[9] A court may find an APA claim "patently without merit" if the plaintiff fails to demonstrate a mandatory duty to act.

of FEGLIA's jurisdictional grant further weighs against finding that the United States has waived sovereign immunity for claims alleging a breach of a duty created by a regulation that was promulgated under FEGLIA.

[9] "The test for determining whether a claim is 'patently without merit' is 'whether the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy . . . . It is not necessary to determine whether the cause of action is one on which the plaintiff could actually recover." *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002) (alterations in original) (quoting *N.Y. Dist. Attorney Investigators Police Benevolent Ass'n v. Richards*, 711 F.2d 8, 10 (2d Cir. 1983)).

*See Kakushadze v. Chertoff*, No. 07-CV-8338, 2008 WL 2885292, at *7-8 (S.D.N.Y. July 25, 2008).  Plaintiff asks the Court to compel Defendants

> to comply with 5 C.F.R. 870.603(a)(2) and, thereby: (1) provide notice of the right to conversion of the decedent's [group] coverage to [Plaintiff], as estate administrator; (2) accept any documents necessary to effectuate reinstatement and conversion of the decedent's [group] coverage; (3) process any documents necessary to effectuate reinstatement and conversion of the [group] coverage; and (4) reinstate and convert the [group] coverage . . . retroactive[ly] . . . for the period August 18, 2006 – November 9, 2006.

(Pl.'s Mem. 8.)  Plaintiff also asks the Court to compel Defendants to pay Plaintiff approximately $180,000 in life insurance benefits that allegedly should have been paid upon the decedent's death.  Even assuming that Plaintiff (on the decedent's behalf) is now entitled to receive notice of the conversion right that should have been received by the decedent upon his separation of service — a premise that Defendants challenge — Defendants do not have a mandatory duty to carry out any of the other actions requested by Plaintiff.[10]  Indeed, it is OFEGLI — the administrative office of the private insurance carrier under the FEGLI program — and not any government agency, that is responsible for implementing the conversion procedures outlined in § 870.603, and it is the private insurer that is responsible for paying benefits, *see* 5 C.F.R. § 870.102.  Therefore, because the government has no statutory or regulatory duty to carry out these actions, Plaintiff's APA claim is "patently without merit" and cannot support the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Similarly, 28 U.S.C. § 1361 requires an identifiable mandatory act in order for the Court to exercise jurisdiction over mandamus actions, and Plaintiff seeks to compel acts from

---

[10] As Defendants note, Plaintiff is unable to cite any provision of FEGLIA, or any regulation, that imposes a duty on the government to notify beneficiaries of lapsed coverage, or to do so after the insured passes away.  (Mem. of Law in Supp. of Govt's Mot. to Dismiss Am. Compl. for Lack of Subject Matter Jurisdiction ("Defs.' Mem.") 19-20.)  Plaintiff also offers no caselaw imputing such a duty.

Defendants which are not mandatory.[11]  Therefore, the Court cannot ground subject matter

jurisdiction on that statute either.  *See Kakushadze*, 2008 WL 2885292, at *7 (finding no subject

matter jurisdiction under 28 U.S.C. § 1361 where there was no mandatory duty by agency to

act).  In any event, the Court finds that Plaintiff, in actuality, is seeking monetary damages, and

it is well-settled that monetary damages are unavailable under the APA.  *See B.K. Instrument,*

*Inc. v. United States*, 715 F.2d 713, 727 (2d Cir. 1983) ("The courts have established firmly that

where the prime objective of the plaintiff is to obtain money damages from the Government, [the

lack of federal district court jurisdiction, pursuant to the APA, may] not be avoided by framing a

complaint to appear to seek only injunctive, mandatory or declaratory relief against government

officials when the result would be the equivalent of obtaining money damages."); *see also Dep't*

*of Army v. Blue Fox, Inc.*, 525 U.S. 255, 263 (1999) (noting that claimant's description of relief

as "equitable" was not dispositive in determining whether relief sought was equitable or

monetary); *Adeleke*, 355 F.3d at 152 n.7 (citing *Blue Fox* and noting that sovereign immunity

bars APA claims for money damages, "even when pursued as an equitable remedy"); *Jaffee v.*

*United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for

damages into an equitable action by asking for an injunction that orders the payment of

money.").  Similarly, money damages are unavailable through 28 U.S.C. § 1361.  *See Brown v.*

*Gen. Servs. Admin.*, 425 U.S. 820, 826 (1976) (approvingly citing an Eighth Circuit case, *Gnotta*

---

[11] Specifically, 28 U.S.C. § 1361 provides, "The district courts shall have original
jurisdiction of any action in the nature of mandamus to compel an officer or employee of the
United States or any agency thereof to perform a duty owed to the plaintiff."  The Second Circuit
"has held that a writ of mandamus may not be granted pursuant to § 1361 unless there is a
plainly defined and peremptory duty on the part of the defendant to do the act in question,"
*McHugh v. Rubin*, 220 F.3d 53, 57 (2d Cir. 2000) (internal quotation marks omitted), and thus
"jurisdiction under the mandamus statute is limited to actions seeking to compel the performance
of a *nondiscretionary* duty," *Daumutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004).

19

*v. United States*, 415 F.2d 1271 (8th Cir. 1969), which held that 28 U.S.C. § 1361 does not

permit suits for money damages); *Tate v. New Jersey*, No. 09-CV-2697, 2009 WL 2185475, at

*2 n.3 (D.N.J. July 17, 2009) (noting, with respect to a related statute, that "[m]andamus . . . is

not an appropriate vehicle for damages"); *Rose v. McNamara*, 225 F. Supp. 891, 893 (E.D. Pa.

1963) (noting that § 1361 does not permit suits which "plainly and clearly seek[] to collect a debt

allegedly due from the United States"). Accordingly, the Court lacks subject matter jurisdiction

over this action, and the Amended Complaint must be dismissed.[12]

### III. Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted. The Clerk of the

Court is respectfully directed to terminate the pending motion (Dkt. No. 13), and close this case.

SO ORDERED.

Dated:  White Plains, New York
       August 12, 2011

                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE

---

[12] It bears repeating that the Court is extremely sympathetic to Plaintiff's situation, and notes that it would be a sad statement if Plaintiff's allegations are true. Our government should do right by its employees, all of whom are public servants. Here, all that was required was notifying the decedent of his loss of his group insurance and his right to convert it to a private plan. Of course, the Court does not know all of the facts, and is constrained by Congress's decision not to unequivocally waive the sovereign immunity of the United States in a case such as this. *See Adeleke*, 355 F.3d at 150 (noting that "the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived").

20

Service List (via ECF):

Joseph Lanni, Esq.
Law Office of Joseph P. Lanni, P.C.
138 Chatsworth Avenue, Ste. 6-8
Larchmont, NY 10538
(914) 834-6600
Email: josephlanni@msn.com
*Counsel for Plaintiff*

Amy Ann Barcelo, Esq.
United States Attorney's Office
New York, NY
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-6559
Fax: (212) 637-2730
Email: amy.barcelo@usdoj.gov
*Counsel for Defendants*